IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

IN RE: THE CONSOLIDATED FGH LIQUIDATING TRUST
f/k/a FRIEDE GOLDMAN HALTER, INC., ET AL.                              DEBTORS

| | | |
|---|---|---|
| THE CONSOLIDATED FGH LIQUIDATING TRUST | § § § | APPELLANT |
| v. | § § § | CAUSE NO. 1:07CV540-LG-JMR |
| RICHARD L. MARLER AND HAND ARENDALL, LLC | § § § | APPELLEES |

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING THE OPINION OF THE BANKRUPTCY COURT**

THE MATTER BEFORE THE COURT is the appeal from the order and opinion of United States Bankruptcy Judge Edward R. Gaines, entered on March 12, 2007, overruling the objection to proofs of claim of Richard L. Marler and Hand Arendall, L.L.C., filed by Oakridge Consulting, Inc. and Ocean Ridge Capital Advisors, L.L.C. for the Consolidated FGH Liquidating Trust. After due consideration of the briefs filed by the parties, the record below, and the relevant law, it is the Court's opinion that the judgment of the bankruptcy court should be affirmed.

FACTS AND PROCEDURAL HISTORY

On July 7, 2007, Richard L. Marler and Friede Goldman International, Inc. ("FGI") entered an employment contract providing that Marler would be granted the option to purchase 100,000 shares of FGI's common stock over time at the price of $2.50 per share. Marler's employment was terminated in 1998. Marler attempted to exercise the option at the time of his termination, tendering a $50,000 check. FGI refused to allow Marler to exercise the option. Marler filed a lawsuit in the Circuit Court of Jackson County, Mississippi, alleging breach of

contract, fraud, promissory fraud, and/or fraud in the inducement.  On February 21, 2000, Marler and FGI entered a Release of All Claims.  FGI agreed to pay Marler and his attorneys, Hand Arendall, $340,000 immediately, and executed two promissory notes in the amount of $340,000, made payable on February 18, 2001, and February 18, 2002, respectively.  Only the first installment of the settlement was paid.  In April of 2001, Friede Goldman Halter ("FGH")[1] filed a chapter 11 bankruptcy petition.  As a result of the unpaid promissory notes, Marler and Hand Arendall ("Claimants") filed three proofs of claim, two of which were later dismissed as duplicative.  The Liquidating Trust objected to the remaining claim, asserting that the claim should be classified as a Class 9-Equity Interest subject to subordination pursuant to 11 U.S.C. §510(b).  However, Claimants argued that the claim was not subject to subordination because the equity interest was converted to two promissory notes over one year prior to the filing of the bankruptcy petition.  The Bankruptcy Court agreed with Claimants and overruled the Trust's objection, holding that " the claim based upon the promissory note is not the type upon which §510(b) mandates subordination."  The Trust appealed the Bankruptcy Court's decision.

## DISCUSSION

The parties disagree over whether an equity-related interest can be altered or converted to a debt, thus avoiding subordination pursuant to 11 U.S.C. §510(b).  While the Fifth Circuit has held that an option constitutes an equity security interest, it has not had the opportunity to address the proper treatment of a promissory note or judgment arising out of a claim for failure to honor an option.  *See Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 525 (5th Cir. 2004).

---

[1] Prior to 2001, the company's name was changed to Friede Goldman Halter, as a result of a merger.

The statute at issue provides:

(b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages **arising from the purchase or sale of such a security**, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

28 U.S.C. §510(b)(emphasis added). The phrase "arising from the purchase or sale of such a security" is open to multiple reasonable interpretations, and is thus ambiguous. *Baroda Hill Inv., Ltd. v. Telegroup, Inc.(In re Telegroup)*, 281 F.3d 133, 138 (3d Cir. 2002). As a result, this Court must look to the statute's legislative history in order to apply the statute to the facts of this case. *In re Telegroup*, 281 F.3d at 138. The Ninth Circuit has explained:

Section 510(b) serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets. The principles behind corporate and bankruptcy laws generally do not favor shifting the risk of loss from shareholders to creditors, even if the shareholders are blameless. One of the primary purposes of section 510(b), therefore, is to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with unsecured creditors.

*Racusin v. American Wagering, Inc. (In re American Wagering, Inc.)*, 493 F.3d 1067, 1071-72 (9th Cir. 2007). The Third Circuit has held that Section 510(b) may also apply to fraudulent inducement claims and other tort claims concerning the sale of stock, noting that the legislative history of the statute reflects an intent to require a causal link between a claim and the purchase or sale of securities. *In re Telegroup*, 281 F.3d at144 & n.2. Therefore, this Court must determine whether there is a causal nexus between the bankruptcy claim and Marler's stock option that warrants subordination.

The District of Delaware has held that claims arising out of promissory notes owed to former shareholders that were traded for their shares were not claims "arising from the purchase or sale" of securities, and therefore were not subject to subordination. *Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs., Inc. (In re Mobile Tool International, Inc.)*, 306 B.R. 778, 782 (D. Del. 2004). The Court in *Mobile Tool* explained:

> [T]he Defendants' claims in this case do not resemble the type of transactions that section 510(b) seeks to subordinate. The purpose of section 510(b) is to prevent shareholders, who assume the risk of a business' failure by investing in securities rather than debt instruments, from filing claims as creditors when the debtor does fail. The statute was designed to prevent stockholders from reaping the benefit of unlimited profits without also fully accepting the inherent risks of ownership, namely loss of their investment.
>
> Here, the Defendants divested themselves of all forms of ownership when they sold the securities back to the Debtors and accepted notes in exchange. As such, they no longer enjoyed the primary benefit of ownership: the potential for unlimited profits. The Debtors' liability to the Defendants became fixed when the debtors issued promissory notes. When the Defendants received the promissory notes, they removed the variable nature of their investment and placed themselves in the position of general creditors. Their claims are not the type which section 510(b) mandates be subordinated.

*In re Mobile Tool*, 306 B.R. at 782. The District of Delaware has also held that an equity stake in a company extinguishes when a claimant obtains a judgment against the company prior to the filing of a bankruptcy petition, such that the claim was not subject to subordination. *Burtch v. Gannon (In re Cybersight, LLC)*, No. 02-11033, 2004 WL 2713098 at *3 (D. Del. Nov. 17, 2004).

However, the Trust relies on the Third Circuit's decision in *Telegroup* in support of its argument that the claim should be subordinated. In *Telegroup*, a group of shareholders sued the debtor, alleging breach of the debtor's obligation to ensure that the stock was registered and

freely tradeable.  *In re Telegroup, Inc.*, 281 F.3d at 144.  However, the *Telegroup* decision is distinguishable because the claims at issue in *Telegroup* had not been converted to promissory notes or a judgment against the debtor.  *Id.* at 136.  Additionally, the claimants in *Telegroup* remained shareholders at the time of the bankruptcy, while Claimants in the present action were never shareholders.  *See id.*

The Trust also asserts that *In re Permian Producers Drilling, Inc.*, supports its position, since the court held that a claim asserted pursuant to a settlement agreement was subject to subordination.  *See in re Permian Producers Drilling, Inc.*, 263 B.R. 510 (W.D. Texas 2000).  However, it weighed heavily with the ourt in that case that the claimant "does not now dispute, that his claim for $2,840,000 represents his interest in PPDI as a shareholder."  *In re Permian Producers Drilling, Inc.*, 263 B.R. at 520.  Specifically, the settlement agreement, which was entered less than one month prior to the bankruptcy, provided that the claimant could collect the funds representing his security interest in the company after payment to the secured and unsecured creditors.  *Id.* at 514.  Therefore, the *Permian Producers* case is distinguishable from the present action because the claimants in *Permian Producers* retained the equitable character of their claim, while the claim in the present case was converted to a debt over one year prior to the filing of the bankruptcy petition.  *See id.*

Yet another case relied upon by the Trust, *Pre-Press Graphics*, is distinguishable from the present case, which is made clear by the following statements made by the Court:

> Here, Pre-Press' misconduct resulted in Weissman receiving a smaller percentage of profits from his 500 shares, and those shares became worth less money.  At all times, however, Weissman continued to enjoy the benefit of sharing in the company's success - and bore the risk of the company's failure.  Weissman disputes this, claiming that such right was extinguished "once the company

    agreed to redeem the shares at a certain price." But if the court looks at the remedy ordered by the state court - repurchase of Weissman's stock at fair value - there can be no doubt that his claim arises from the purchase or sale of securities.

*Weissman v. Pre-Press Graphics Co. (In re Pre-Press Graphics Co.)*, 307 B.R. 65, 80 (N.D. Illinois 2004). Thus, once again, the equitable nature of the claim in *Pre-Press Graphics* was retained, while the equity at issue in the present action was converted to a debt. *See id.*

    The legislative history of 28 U.S.C. §510(b) does not support a holding that the claim at issue should be subject to subordination. Marler never was a shareholder of the debtor, and although he attempted to purchase stock and thus accept the company's risk of failure, he was never allowed the opportunity to do so. As a result of the refusal of his stock option, he filed a lawsuit seeking damages, and promissory notes were executed by the parties in which the debtor agreed to make two payments to Marler and his attorneys. The equitable nature of the claim was not retained, in that it was converted to a debt over one year prior to the filing of the debtor's bankruptcy petition. Therefore, the claim is not subject to subordination pursuant to 28 U.S.C. §510(b).

    **IT IS THEREFORE ORDERED AND ADJUDGED** that the opinion and order of United States Bankruptcy Judge Edward R. Gaines, entered on March 12, 2007, overruling the objection to the claim asserted by Richard L. Marler and Hand Arendall, L.L.C., is **AFFIRMED** and this appeal is **DISMISSED**.

    **SO ORDERED AND ADJUDGED** this the 2[th] day of October, 2007.

                                 s/ *Louis Guirola, Jr.*
                                   LOUIS GUIROLA, JR.
                                   UNITED STATES DISTRICT JUDGE